# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                          )
**JUAN D. ALVAREZ,**                       )
                                          )
       **Plaintiff,**              )
                                          )   **Civil Action No.**
       v.                          )   **11-12324-FDS**
                                          )
**U.S. BANK N.A. and FEDERAL HOME**        )
**MORTGAGE ASSOCIATION,**                  )
                                          )
       **Defendants.**              )
_____)

# MEMORANDUM AND ORDER
# ON MOTION TO DISMISS

**SAYLOR, J.**

     This action arises from a homeowner's default on a home loan and the resulting mortgage foreclosure. In 2005, plaintiff Juan D. Alvarez purchased a house in Worcester, Massachusetts. On November 28, 2007, Alvarez refinanced his mortgage on the property with a loan from Metrocities Mortgage, LLC. As part of the loan transaction, he granted a mortgage on the house to defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Metrocities. The loan note was later assigned to defendant U.S. Bank, N.A.

     Alvarez defaulted on his home loan during the summer of 2009. He negotiated a modified repayment plan with U.S. Bank and made payments pursuant to it for several months. After he again fell behind on payments, he sought a loan modification agreement pursuant to the Home Affordable Modification Program ("HAMP"), a federal initiative designed to provide incentives for lenders to agree to modification of home loan agreements in lieu of foreclosure. After that request was denied, he submitted a renewed HAMP request. Defendants nonetheless proceeded

to foreclose on the house. At the foreclosure sale, the property was purchased by defendant Federal Home Mortgage Association ("Fannie Mae").

Alvarez commenced this action against U.S. Bank and Fannie Mae on November 28, 2011, in the Worcester Superior Court. Defendants removed to this Court.

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted.

**I. Background**

**A. Factual Background**

The facts are stated as alleged in the complaint.[1]

In 2005, plaintiff Juan D. Alvarez purchased a home at 384 Lovell Street in Worcester, Massachusetts. (Compl. ¶ 1). At the time this action was commenced, he lived there with his wife and children, including a fourteen-year-old son who suffers from Down syndrome. (*Id.*). Alvarez speaks limited English and earns a net monthly income of between $2,500 and $3,500 as an independent truck driver. (*Id.* ¶¶ 6, 12).

On November 28, 2007, Alvarez refinanced his mortgage on the property at 384 Lovell Street with a 30-year fixed-rate loan of $247,500 from Metrocities Mortgage, LLC. (*Id.* ¶¶ 2, 8-9, Fergus Ex. A). The loan note provided for an annual interest rate of 6.75 percent annually and for monthly payments of $1,605.28. (Fergus Ex. A).

---

[1] The court also draws on exhibits to the complaint and other uncontested documents on which the complaint relies. *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

2

The loan was secured by a first mortgage on the property granted to MERS as nominee for Metrocities. (Fergus Ex. B). The mortgage deed defines "MERS" as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (*Id.*).

Alvarez was not represented by legal counsel at the closing for his refinanced loan and mortgage, and no translator was available. (Compl. ¶ 10). The complaint alleges that many terms of the loan, including the role of MERS as a nominee, were not explained to him. (*Id.* ¶ 11).

On January 28, 2009, Metrocities assigned its interest in the mortgage to defendant U.S. Bank, a national bank based in Owensboro, Kentucky. (*Id.* ¶¶ 3, 4).

Alvarez made all monthly payments required under the loan agreement until May 2009. (*Id.* ¶ 13). However, he missed the payments that were due in June, July, and August of that year. (*Id.* ¶ 14). In September, a representative of U.S. Bank told him that he would be allowed to make up the late payments according to a plan by which he would owe $1,616 per month for the remainder of 2009, $1,750 per month through 2010, and $1,900 through 2011. (*Id.* ¶ 14). The representative did not provide written documentation of the modification. (*Id.* ¶ 15).

Alvarez made payments of $1,616 per month, pursuant to the modified repayment plan, for six months. (*Id.* ¶ 15). He then fell behind on his payments for a second time. (*Id.*).

Alvarez then contacted Credibility, a housing counseling agency. (*Id.* ¶ 17). Credibility assisted him in preparing an application for a loan modification agreement under HAMP, which he submitted to U.S. Bank. (*Id.*). He received no written acknowledgment or decision from the bank relating to that request. (*Id.* ¶ 19). However, in the fall of 2010, Alvarez was told by telephone that his HAMP request was denied because his income was too high for a modification. (*Id.* ¶ 20). According to the complaint, the bank had erred in denying the application because it

had calculated his income based on the gross revenue of his business instead of its net profits. (*Id.*).

On March 11, 2011, an agent from Credibility spoke with an employee of U.S. Bank and learned that Alvarez's application had been turned down. (*Id.* ¶ 22). She told Alvarez that on March 14, and the next day he submitted a renewed HAMP request to the bank. (*Id.* ¶ 22-23). Alvarez never received a response to his second application. (*Id.* ¶ 24-25). On March 21, 2011, U.S. Bank held a foreclosure sale, at which point defendant Fannie Mae purchased the property. (*Id.* ¶ 28)

On November 28, 2011, Alvarez commenced this action. The complaint alleges that defendants (1) violated the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A; (2) breached the implied covenant of good faith and fair dealing; (3) violated the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f ("TILA") and its implementing regulation, Federal Reserve Board Regulation Z, 12 C.F.R. § 226; (4) unlawfully foreclosed on the property because U.S. Bank did not have a valid interest in the mortgage; (5) fraudulently misrepresented Alvarez's income on certain documents related to his loan and HAMP application; (6) violated proper foreclosure procedures; and (7) intentionally inflicted emotional distress.

After defendants removed the action to this court, plaintiff sought a temporary restraining order to prevent his eviction from the house and to prevent defendants from selling it to a third party during the pendency of this action. The court denied that motion on March 5, 2011.

### B. <u>Legal Background</u>

In February 2009, the Secretary of the Treasury established HAMP under authority delegated to him by the Emergency Economic Stabilization Act of 2008 and the Troubled Asset

4

Relief Program ("TARP"). 12 U.S.C. §§ 5201, 5211-5241.[2] The goal of HAMP is to provide relief to borrowers who have defaulted or are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt. *See* U.S. Dep't of the Treasury, Supplemental Directive 09-01, *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf. Under HAMP, loan servicers are provided with $1,000 incentive payments for each permanent mortgage-loan modification completed. *Id.* at 23. These modifications proceed under a uniform process designed to identify eligible borrowers and render their debt obligations more affordable and sustainable. *Id.* at 1.

The Department of the Treasury has issued a series of directives that provide guidance to servicers implementing HAMP. *Id.* Under these guidelines, mortgage servicers are directed to identify and solicit borrowers who are in default on their mortgage payments, or soon will be. *See id.* Within this group, borrowers may be eligible for a loan modification under HAMP if the mortgage loan originated before January 1, 2009; if the mortgage is secured by the borrower's primary residence; and if the mortgage payments amount to more than 31% of the borrower's monthly income. *Id.* at 2.[3] To participate in HAMP, borrowers must submit an affidavit documenting financial hardship. *Id.* at 3. In addition, the servicer must conduct a Net Present Value ("NPV") test, which assesses whether it would be more advantageous to foreclose or to modify the terms of the first-lien loan. *Id.* at 3-5.

---

[2] The Department of the Treasury established HAMP jointly with the Federal Housing Finance Agency, the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 347 n.3 (D. Mass. 2011).

[3] There are several other eligibility requirements. Among other things, the mortgage loan must be secured by property containing no more than four units, and, depending on the number of units, the guidelines set ceilings on the unpaid principal balance. *See id.* at 2-3.

## II. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III. Analysis

### A. Massachusetts Consumer Protection Statute

Mass. Gen. Laws ch. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Conduct is unfair or deceptive if it falls "within any recognized or established common law or statutory concept of unfairness." *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994). Actionable conduct under the statute encompasses "[a]ctions involving fraudulent representations in knowing disregard of the truth," *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 780 (1986), and "conduct 'in disregard of known contractual arrangements'

6

and intended to secure benefits for the breaching party." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991) (quoting *Wang Labs., Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 857 (1986)).

Plaintiff contends that defendants engaged in unfair and deceptive practices by wrongfully foreclosing on plaintiff's mortgage while he was being considered for a loan modification under HAMP. HAMP itself does not create a private right of action. *Okoye v. Bank of N.Y. Mellon*, 2011 U.S. Dist. LEXIS 82769, at *22 (D. Mass. July 28, 2011). Conduct that violates a statute or regulation for which there is no private means of recovery may constitute a Chapter 93A violation. However, "for a cause of action pursuant to chapter 93A to proceed, the violation [of the other statute or regulation] must be determined to be unfair or deceptive in and of itself[.]" *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 66 (1st Cir. 2009) ("To prove [a claim under Chapter 93A], it is neither necessary nor sufficient that a particular act or practice violate common or statutory law.").

In assessing a Chapter 93A claim that is premised on alleged violations of HAMP, the relevant inquiry is (1) whether there a HAMP violation, (2) whether the violation consists of conduct that would be independently actionable under Chapter 93A, and (3) whether, if the conduct is actionable, recovery under Chapter 93A is consistent with the objectives and enforcement mechanisms of HAMP. *Morris*, 775 F. Supp. 2d at 259. Each of these three requirements must be adequately pleaded for a Chapter 93A action to survive a motion to dismiss. *See Ording v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 83269, *21 (D. Mass. Jan. 10, 2011) (dismissing a complaint for failure to plead the first requirement).

Here, the complaint fails to plead an actual HAMP violation. Plaintiff asserts that defendants violated HAMP regulations by foreclosing on the mortgage during the pendency of his application for a loan modification. However, plaintiff acknowledges that after he submitted his first HAMP request, he was informed both in the fall of 2010 and again on March 14, 2011, that U.S. Bank had denied his application to modify the loan. (Compl. ¶¶ 20-22). He filed a second HAMP request on March 15, and the foreclosure occurred on March 21. (*Id.* ¶ 23, 28). Thus, plaintiff's claim rests not on a foreclosure during the pendency of an initial loan modification request, but during a second application after the first was denied. Although Supplemental Directive 09-01 provides that "servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program," the purpose of that rule is "to ensure that a borrower currently at risk of the foreclosure has the opportunity to apply for the HAMP." Supplemental Directive 09-01, at 14. That purpose was served once plaintiff made, and defendants considered, the first loan modification request. Defendants' unwillingness to delay foreclosure further when plaintiff attempted to avail himself of a second application therefore did not violate Supplemental Directive 09-01, or, as far as the Court can tell, any federal statute or regulation.

Because plaintiff has not pleaded a violation of HAMP, the motion to dismiss will be granted as to the Chapter 93A claim.

**B.** **Implied Covenant of Good Faith and Fair Dealing**

Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant provides that "neither party shall do anything that will have the effect of destroying

8

or injuring the rights of the other party to receive the fruits of the contract." *Anthony's*, 411 Mass. at 471-72 (quotations omitted). Put another way, the parties to a contract implicitly agree "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract." *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 211 (1993). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants*, 441 Mass. at 385.

The covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *Uno Restaurants*, 441 Mass. at 385-86; *Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001). However, "[a] party may breach the covenant of good faith and fair dealing . . . without breaching any express term of th[e] contract. Otherwise, the implied covenant would be a mere redundancy." *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240 (D. Mass. 2011) (quoting *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005)). "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Speakman*, 367 F. Supp. 2d at 132.

Plaintiff alleges two distinct breaches of the implied covenant of good faith and fair dealing. First, he contends that defendants violated the covenant at the time of the loan closing by failing to represent plaintiff's income accurately, by providing him with an unaffordable mortgage, and by failing to explain exactly what entities would hold his mortgage. (Compl. ¶ 52). Second, plaintiff asserts that defendants did not exercise good faith or reasonable diligence in conducting

9

the foreclosure sale of his house during the pendency of his second HAMP application. (*Id.* ¶ 53).

The trouble with plaintiff's allegations relating to the loan closing is that they arise only from actions that took place during the formation of the contract between the parties. Because the covenant of good faith and fair dealing is an implied contractual obligation, it cannot be breached until a valid contract exists. *Petricca v. City of Gardner*, 429 F. Supp. 2d 216, 224 (D. Mass. 2006) ("A breach of [the duty of good faith and fair dealing] exists only where there is an enforceable contract between the parties."). Because defendants' actions at closing occurred before there was a contract, they could not constitute dishonest or bad-faith conduct in the course of the contract's performance or enforcement.

Plaintiff's second argument—that defendants breached the covenant by foreclosing on the property shortly after plaintiff filed a HAMP application—is more complicated, but it too ultimately fails. The complaint alleges that plaintiff submitted a second HAMP application on March 15, 2011, and that defendant U.S. Bank held the foreclosure sale six days later, on March 21. (Compl. ¶¶ 23, 28).[4]

In support of his position that defendant violated the covenant by proceeding with the foreclosure sale while a HAMP application was pending, plaintiff cites *Cruz v. Hacienda Assocs., LLC (In re Cruz)*, 446 B.R. 1 (Bankr. D. Mass. 2011). In *Cruz*, the bankruptcy court ruled that there was a substantial likelihood that a bank violated the implied covenant by scheduling and executing a foreclosure sale while a debtor's application for a loan modification under HAMP was pending. *Cruz*, 446 B.R. at 4-5. Although the bank had denied the application eight days before

---

[4] Plaintiff argues that HAMP guidelines and directives required defendant to suspend the foreclosure upon receipt of the renewed modification application. (*Id.* ¶ 29). As discussed above, defendants' conduct did not violate Supplemental Directive 09-01.

the sale, it had failed to provide the debtor with written notice of the denial or an offer of other foreclosure mitigation options as required under HAMP guidelines. *Id.*

Here, however, the allegations in the complaint do not state a claim even under the reasoning of the court in *Cruz*. Although plaintiff did submit a loan modification request to U.S. Bank shortly before the foreclosure sale, that was his second such request, as the bank had previously rejected his initial application. (Compl. ¶ 20; Def. Ex. C). The lack of notice to the debtor that the court in *Cruz* found dispositive was therefore absent in this case. The complaint alleges no other conduct that might amount to bad faith or dishonest dealings in connection with the scheduling and execution of the foreclosure sale.

Accordingly, the motion to dismiss will be granted as to the claim that defendants breached the implied covenant of good faith and fair dealing.

### C. TILA Claim

TILA requires creditors "to disclose clearly and accurately all the material terms of a credit transaction." *Palmer*, 465 F.3d at 27 (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)). Under TILA and it implementing regulation, Federal Reserve Board Regulation Z, consumers who are injured by creditors' violations of the statutory disclosure requirements may seek either damages or rescission of the loan agreement. 15 U.S.C. § 1640(a); 12 C.F.R. § 226.23(a).

TILA provides that any action for civil damages under its provisions must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). By contrast, Regulation Z states that "the right to rescind shall expire 3 years after consummation." 12 C.F.R. § 226.23. Courts in this district have split on the issue of which limitations period

11

applies to a consumer who has a timely claim for rescission but seeks a damages remedy. *See Rodrigues v. Members Mortg. Co., Inc.*, 323 F. Supp. 2d 202, 210 (D. Mass. 2004) (holding that the applicable limitations period is one year); *McIntosh v. Irwin Union Bank and Trust, Co.*, 215 F.R.D. 26, 30 (D. Mass. 2003) (holding that the applicable limitations period is three years).

Here, plaintiff seeks damages for defendants' alleged failure to state his income accurately on loan paperwork and for failing to disclose the role of MERS in holding the mortgage as a nominee. Those alleged TILA violations occurred at the loan closing, on November 28, 2007. The complaint in this action was filed four years later, on November 28, 2011. The action is therefore untimely regardless of whether the one-year or the three-year limitations provision applies.

Accordingly, the motion to dismiss will be granted as to the TILA claim.

### D. **Standing/Proof of Ownership**

Standing to bring a foreclosure by sale action is generally limited to "the mortgagee or the person having his estate in the land mortgaged [e.g., his assignee]." Mass. Gen. Laws ch. 244, § 14. *See Nichols v. Cadle Co.*, 139 F.3d 59, 61-62 (1998) (assignment of mortgage under § 14 normally conveys power of sale). Plaintiff contends that MERS does not have a valid interest in the mortgage and that the note that underlies the mortgage was not validly transferred to defendant U.S. Bank.

Here, the mortgage document clearly designates MERS as the mortgagee. According to the terms of the mortgage, "MERS is a separate corporation that is acting solely as a nominee for Lender [defined as "METROCITIES MORTGAGE, LLC"] and Lender's successors and assigns." (Def. Ex. B). In Massachusetts, a mortgage does not automatically follow the note it

12

secures, and a mortgage and its associated note may be held by separate parties. *United States Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 652-53 (2011). There accordingly was nothing improper in the initial assignment of the mortgage to MERS.

Furthermore, plaintiff's allegation that there is no evidence that the underlying note was transferred to defendant U.S. Bank is without any basis. The transfer of the note from Metrocities Mortgage LLC was clearly documented in a notice of assignment dated December 21, 2007. (Def. Ex. D). Plaintiff does not challenge the authenticity of that document, so this Court may rely on it in resolving this motion to dismiss. *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

Finally, MERS did not violate plaintiff's rights by assigning the mortgage to U.S. Bank before the foreclosure proceedings began. When a note holder elects to file a foreclosure action, the note holder is permitted to direct MERS to execute an assignment to facilitate that action. *See In re Mortgage Elec. Registration Sys. Litig.*, 659 F. Supp. 2d 1368 (J.P.M.L. 2009).

Accordingly, the motion to dismiss will be granted as to the standing claim.

### E. Fraud

In Massachusetts, a defendant may be liable for fraudulent misrepresentation if he "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982); *Aliberti v. GMAC Mortg., LLC*, 779 F. Supp. 2d 242, 248 (D. Mass. 2011).

However, actions for fraud are subject to a three-year limitations period. Mass. Gen. Laws ch. 260, § 2A. Here, plaintiff alleges that defendants willfully misrepresented plaintiff's

13

income on certain paperwork during the mortgage closing, which occurred on November 28, 2007. (Compl. ¶¶ 2, 70). The complaint in this action was filed four years later, on November 28, 2011.

Plaintiff contends that accrual of his fraud claim was delayed because he was not aware that his income was misstated on the closing documents. Under the Massachusetts discovery rule, the running of the statute of limitations is delayed while the facts that underlie the claim remain "inherently unknowable" to the injured party. *Saenger Org. v. Nationwide Ins. Licensing Assoc.*, 119 F.3d 55, 65 (1st Cir. 1997); *see also Williams v. Ely*, 423 Mass. 467, 474 n.7 (1996) ("Some of our opinions have stated that a plaintiff seeking to show that the statute of limitations did not begin to run must demonstrate that the claim was 'inherently unknowable,' a standard that is no different from, and is used interchangeably with, the 'knew or should have known' standard."). Here, however, plaintiff does not allege that it was impossible for him to know what defendants stated to be his income. He alleges only that he was unaware that the numbers that appeared on the relevant documents were false. The discovery rule does not delay accrual for parties who, while aware of the facts that underlie their claim, fail to take reasonable investigatory measures to develop their case. Thus, plaintiff cannot claim the benefit of the discovery rule.

Accordingly, the motion to dismiss will be granted as to the fraud claim.

### F.     Adherence to Foreclosure Procedures

Plaintiff's sole contention regarding the foreclosure process is that a Certificate of Entry filed with the Worcester Registry of Deeds contains a signature—that of Holly Cresta—that "does not appear on the face of it to be a valid signature." (Compl. ¶ 66).

The certificate, which was filed on March 30, 2011, is publicly available through the

website for the Worcester Registry of Deeds. *See* Certificate of Entry, Worcester Registry of Deeds bk. 47238, at 38 (March 30, 2011), *available at* http://www.masslandrecords.com/worcester/.[5] On its face, the signature of Holly Cresta appears valid, and it is authenticated by notarization. Where a complaint alleges that a signature on a loan instrument is forged or similarly invalid, the Court may examine the document and dismiss the claim if it lacks "facial plausibility." *See Surabian v. HSBC Bank USA, NA*, 2012 U.S. Dist. LEXIS 40607 (D. Mass. Mar. 26, 2012). Here, the signature appeals valid, and the complaint includes no allegations that might create a dispute as to its authenticity. In sum, plaintiff's allegation is wholly speculative and cannot sustain his claim that the foreclosure was procedurally defective.

Accordingly, the motion to dismiss will be granted as to the claim based on alleged defects in the foreclosure process.

### G. Intentional Infliction of Emotional Distress

In Massachusetts, to state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege (1) that the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and of a nature that no reasonable person could be expected to endure it. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976).

Here, the bank's decision to pursue a home foreclosure following plaintiff's default does not rise to the level of extreme misconduct necessary under that standard. Conduct is "extreme

---

[5] In evaluating a motion to dismiss, the Court may consider documents that, as public records, are susceptible to judicial notice. *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

15

and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987). Recovery for an IIED claim generally "requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Foley*, 400 Mass. at 99). While "home foreclosure is a terrible event and likely fraught with unique emotions and angst," foreclosures, even ones that may involve improper conduct, do not readily go "beyond all possible bounds of decency." *Moore v. Mortgage Elec. Registration Sys., Inc.*, 2012 WL 253834, at *21 (D.N.H. 2012) (internal citations omitted). Absent extreme aggravating factors, a court cannot declare that a foreclosure is something that is "atrocious and utterly intolerable in a civilized community." *Id. See also Alpino v. JPMorgan Chase Bank, Nat'l Ass'n*, 2011 U.S. Dist. LEXIS 43210, at *8 (D. Mass. April 21, 2011) (dismissing claim for IIED where, "[a]t most, the defendant failed to consider the plaintiff for a mortgage modification under HAMP and then failed to operate an open and fair foreclosure sale").

Because the complaint does not allege conduct that is sufficiently outrageous to support an IIED claim, defendant's motion to dismiss will be granted as to that claim.

## IV. Conclusion

For the foregoing reasons, defendant's Motion to Dismiss the complaint is GRANTED.
**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 22, 2012